UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **DANIEL GOLODNER,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO.** |
| | : | |
| **v.** | : | **3:14-cv-00173-VLB** |
| | : | |
| **CITY OF NEW LONDON, CT; and** | : | **MARCH 31, 2015** |
| **MARGARET ACKLEY, individually and in** | : | |
| **her official capacity,** | : | |
| **Defendants.** | : | |

**MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION TO
DISMISS**

Before the Court is defendants City of New London ("New London")
and Margaret Ackley's motion to dismiss plaintiff Daniel Golodner's
complaint in its entirety.  Plaintiff's complaint contains three causes of
action: (1) a claim that New London has an unofficial policy and custom of
allowing warrantless entry into private property in New London in violation
of the Fourth Amendment of the United States Constitution; (2) a claim that
defendant Ackley failed to provide proper training for New London Police
Department police officers; and (3) a claim for violation of Article I, Section
7 of the Connecticut State Constitution against both defendants.  For the
following reasons, defendant's motion to dismiss is granted.

**I. FACTUAL BACKGROUND**

The following facts are taken from plaintiff's complaint unless
otherwise specified.  At all times relevant to the complaint, plaintiff Daniel
Golodner has owned and lived in a single-family home on Colman Street, in
the city of New London, Connecticut.  Defendant Margaret Ackley was, at

all times relevant to the complaint, a supervisor in the New London Police Department.[1]  As the top policy-maker for the New London Police Department (the "NLPD"), Ackley is responsible for the proper training of the officers of the NLPD, and for ensuring that the officers follow constitutional mandates.  Ackley is a municipal employee, employed by the defendant City of New London.

On various dates, including approximately May 25, 2006, and August 22, 2008, and continuing through at least September 23, 2011, uniformed NLPD officers have entered the side and rear yards of plaintiff's Colman Street property without permission or warrant.

Plaintiff's property was marked with "No Trespassing" signs and enclosed by a fence running along the rear and side perimeters of the property during the times relevant to the complaint.  On "various occasions" plaintiff has instructed officers to get off his property and told them that they have no permission to remain on his property.  Plaintiff communicated on multiple occasions with supervisors in the NLPD, including defendant Ackley, to protest the intrusion onto his property.

In spite of plaintiff's previous complaints, on or about February 16, 2011, a NLPD police officer entered the side and rear of plaintiff's property and conducted a warrantless search, without first contacting the plaintiff.  On or about September 23, 2011, on or more NLPD police officers entered

---

[1] Plaintiff states that Ackley has "risen to the position of Chief of Police." Compl. ¶ 5.  However, the complaint does not make clear whether Ackley was Chief of Police at the times relevant to the complaint.

the side and rear of plaintiff's property, and ignored plaintiff's demand that they leave.

## II. STANDARD OF LAW

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. United States*, 678 F.3d 147, 152 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir.2010) (citing *Iqbal*, 556 U.S. at 678-79). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled

to the assumption of truth.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id .* (quoting *Iqbal,* 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (internal quotations omitted).

## III. DISCUSSION

### A. Statute of Limitations

Defendants argue that plaintiff's claims are barred in part by the three-year statute of limitations for section 1983 claims.  Plaintiff's complaint, which was filed February 11, 2014, alleges unlawful intrusions by NLPD officers on May 25, 2006, August 22, 2008, February 16, 2011, and September 23, 2011.  Defendant argues that claims regarding the May 25, 2006 and August 22, 2008 claims are untimely. Plaintiff argues in response that his allegations regarding conduct outside the limitations period qualify for an exception to the statute of limitations because plaintiff alleges a continuing course of conduct.

Section 1983 claims are subject to a three year statute of limitations in Connecticut.  *Barile v. City of Hartford*, 264 F. App'x 91, 91 (2d Cir. 2008) ("In Connecticut, a plaintiff must bring his § 1983 claim within three years of the date his claim accrues." (citing *Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994); Conn. Gen. Stat. § 52-577).  There is an exception to the

statute of limitations applicable to section 1983 claims for acts that are part of a continuing course of conduct.

The continuing violation doctrine tolls the statute of limitations on a plaintiff's section 1983 claim "where the alleged violation is 'composed of a series of separate acts that collectively constitute one unlawful . . . practice.'" *Vaden v. Connecticut*, 557 F. Supp. 2d 279, 284 (D. Conn. 2008) (quoting *Washington v. Cnty. Of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004)). "An allegation of several unlawful acts, even similar ones, does not, in and of itself, establish a continuing violation." *Cotz v. Mastroeni*, 476 F. Supp. 2d 332, 357 (S.D.N.Y. 2007) (citing *Lambert v. Genesee Hosp.*, 10 F.3d 46, 52 (2d Cir. 1993)). To invoke the continuing violation doctrine, plaintiff must prove: "(1) an underlying unconstitutional policy or practice; and (2) an action taken pursuant to that policy during the statutory period preceding filing the complaint." *Id.* (citing *Conn. Light & Power Co. v. Sec'y of the United States Dep't of Labor*, 85 F.3d 89, 96 (2d Cir. 1993)).

In a footnote, defendants questioned whether the continuing violation doctrine can apply outside of the context of employment discrimination claims. Defendant cites no authority barring the use of the continuing violation doctrine with regards to Fourth Amendment claims, and as there is precedent for expanding the doctrine beyond the employment realm to other policies that are "constitutionally infirm," the court finds defendant's argument unpersuasive. *See Shomo v. City of New York*, No. 07-1208, 2009 U.S. App. LEXIS 23076, at *10 (2d Cir. Apr. 1, 2009)

(finding that the continuing violation doctrine can apply "when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs."); *Ruane v. Cnty. Of Suffolk*, 923 F. Supp. 2d 454, 459 n.6 (E.D.N.Y 2013) ("Since the continuing violation doctrine has been expanded to non-employment discrimination cases, courts look to whether the "policies were constitutionally infirm" instead of whether such policies were discriminatory." (quoting *Remigo v. Kelly*, No. 04Civ.1877, 2005 U.S. Dist. LEXIS 16789, at *18-19 (S.D.N.Y. Aug. 12, 2005))).

The doctrine applied to the plaintiff's claims, but he has not plead adequate facts for the court to determine whether an unconstitutional policy existed or whether each is a "discrete act" or whether the acts of which he complains  are the product of an underlying unconstitutional policy or practice, as discussed in greater detail below, *infra* Part III.B. The claims arising from the May 25, 2006 and August 22, 2008 incidents are thus dismissed without prejudice to re-filing in an amended complaint within twenty-one (21) days of this opinion. *Cf. Harper v. City of New York*, No. 09cv05571, 2010 U.S. Dist. LEXIS 122184, at *19 n.7 (E.D.N.Y. Nov. 17, 2010) (declining to apply continuing violation doctrine where plaintiff "failed to allege that the incidents described in the amended complaint were the result of a custom or policy rather than [discrete] occurrences.").

## B. Plaintiff's *Monell* Claims Against New London

Plaintiff alleges in his complaint that the "repeated acts" by multiple police officers, and an apparent indifference to plaintiff's complaints regarding these acts, demonstrates that New London has an unofficial policy and custom of allowing "warrantless entry into the clearly recognized and identified curtilage of residences within the City of New London."  Compl. ¶ 14.

Defendants argue that plaintiff has failed to adequately allege a claim against the City of New London in Count One because: (1) he offers no facts to support his claim that New London created an unofficial policy of allowing unlawful searches of the "curtilage" of homeowners' property; and (2) the incidents named in plaintiffs' complaint lack temporal proximity.

To prevail on a section 1983 claim against a municipality based on the acts of a public official, a plaintiff must prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978)). The fifth element, that of an official policy that caused the constitutional injury, "can only be satisfied where a plaintiff proves that a 'municipal policy of some nature caused a constitutional tort.'"  *Id.* (citing *Monell*, 436 U.S. at 691).

If plaintiff does not complain of an official policy, "[i]n limited circumstances, a local government's decision not to train certain

employees about their legal duty to avoid violating citizens' rights may rise
to the level of an official government policy for purposes of § 1983."
*Connick v. Thompson*, __ U.S. __, 131 S. Ct. 1350, 1359 (2011); *see also*
*Russo v. City of Hartford*, 341 F. Supp. 2d 85, 107 (D. Conn. 2004) (("A
plaintiff may also establish municipal liability by showing that a municipal
policy or custom existed as a result of the municipality's deliberate
indifference to the violation of constitutional rights, either by inadequate
training or supervision." (citing *Vann v. City of New York*, 72 F.3d 1040,
1049 (2d Cir. 1995)).

 "A pattern of similar constitutional violations by untrained
employees is 'ordinarily necessary' to demonstrate deliberate indifference
for purposes of failure to train." *Connick*, 131 S. Ct. at 1360 (citing *Bd. of
Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). To be liable, a
municipality's failure to train its employees must "amount[] to deliberate
indifference to the rights of persons with whom the untrained employees
come into contact." *Parker v. City of Long Beach*, 563 F. App'x 39, 41 (2d
Cir. 2014) (quoting *Connick*, __ U.S. at __, 131 S. Ct. at 1359). "'[D]eliberate
indifference is a stringent standard of fault, requiring proof that a municipal
actor disregarded a known or obvious consequence of his action.'"
*Connick*, __ U.S. at __, 131 S. Ct. at 1360 (quoting *Bryan Cnty.*, 520 U.S. at
407). A plaintiff must prove that city policy makers were on "actual or
constructive notice that a particular omission in their training program

causes city employees to violate citizens' constitutional rights" and then chose to retain that program. *Id.* (citing *Bryan Cnty.*, 520 U.S. at 410).

Plaintiff's complaint fails to adequately allege that New London was aware of the alleged constitutional violations. Plaintiff alleges that he told defendants of the violations, but plaintiff does not allege when he communicated with defendants.  Plaintiff says only:

- "plaintiff has communicated on multiple occasions with supervisors of the defendants' officers, including defendant Ackley, to protest the unlawful and unconstitutional intrusion into the curtilage of his property."  Compl. ¶ 11a.[2]

- "plaintiff communicated with elected New London municipal officials regarding his complaints and addressed the City Council regarding the aforesaid unlawful entries."  Compl. ¶ 11b.

- "repeated acts over the course of several years by numerous officers . . . , despite numerous protests and complaints by the plaintiff during and before the relevant time period."  Compl. ¶ 14.

None of these allegations is sufficient to suggest that the defendant municipality was or should have been aware of the alleged constitutional violations.  In none of these does plaintiff say when or with whom he communicated. The allegations in paragraphs 11a and 11b, that he communicated with supervisors and municipal officials contain no indication of when such communications occurred. Although plaintiff

---

[2] There are two paragraphs number "11" in plaintiff's complaint.  The court will refer to the first as "11a" and the second as "11b."

alleges in paragraph 14 that he raised "numerous protests and complaints . . . during and before the relevant time period" this allegation is too vague. Although it alleges that he made a protest or complaint "before the relevant time period," he does not say when he complained, to whom he complained, the content of his complaints, or the response he received.

Plaintiff does allege in paragraph 12 that he made "complaints" prior to an alleged unconstitutional search that occurred on February 16, 2011, as plaintiff states that a New London police officer conducted a warrantless search of the side and rear curtilage of his property "despite prior complaints about such activity filed by the plaintiff."  Compl. ¶ 12. Although this allegation is the closest plaintiff comes to allowing the court to infer deliberate indifference, this allegation is too vague, as plaintiff does not say when or to whom he complained, of what form the complaint took. Plaintiff also alleges that "on various occasions" he has "instructed defendants' officers to get off his property, and/or stated that they have no permission to remain thereupon."  Compl. ¶ 10.  However, plaintiff does not allege that these complaints were repeated up the chain of command, or were otherwise made in such a way that the defendant municipality would or should have learned of them.

In *Grullon v. City of New Haven*, the Second Circuit said that where a complaint contained factual allegations indicating that a letter to defendant prison warden "was sent to the Warden at an appropriate address and by appropriate means," the district court could draw the reasonable inference

that the defendant had received and read the letter, and "became aware of the alleged conditions." 720 F.3d 133, 141 (2d Cir. 2013). In this case, plaintiff has not plead factual allegations by which this court could draw the inference that communications regarding the alleged unconstitutional searches and seizures were received and read prior to any of the alleged incidents. Plaintiff has made only vague general statements regarding his alleged communications with defendants, and thus plaintiff has failed to adequately allege that New London was deliberately indifferent.

Further, plaintiff has not alleged a pattern of similar unconstitutional actions.  Although plaintiff alleges four separate incidents of alleged warrantless entry onto the "curtilage" of his residence, plaintiff has not alleged facts to show these warrantless entries were similar or otherwise make up a pattern of unconstitutional entry. In *Connick v. Thompson*, the Supreme Court found that previous state court decisions overturning verdicts because of *Brady* violations could not have put defendant district attorney on notice that his office's *Brady* training was inadequate, because the *Brady* violations in the previous court decisions were not the same sort of *Brady* violations at issue in *Connick*. 131 S. Ct. at 1360 ("Because those incidents are not similar to the violation at issue here, they could not have put Connick on notice that specific training was necessary to avoid this constitutional violation."). Similarly, because plaintiff here has alleged no facts about the individual violations, the court cannot draw the reasonable inference that there is a pattern of similar unconstitutional acts here.

11

Defendant also argues in passing that plaintiffs have failed to allege the second element of a *Monell* claim, which requires plaintiff to have suffered a deprivation of a constitutional or statutory right. Defendants argue that plaintiff has failed to plead sufficient facts to allow the court to infer that the NLPD entered the "curtilage" of plaintiff's property. Defendant is correct that in order to enjoy Fourth Amendment protection against unreasonable searches and seizures, a plaintiff must show that the area in question enjoyed a "reasonable expectation of privacy." *Marchand v. Simonson*, 16 F. Supp. 3d 97, 116 (D. Conn. 2014) (quoting *United States v. Reilly*, 76 F.3d 1271, 1276 (2d Cir. 1996). The Supreme Court has laid out four factors that are relevant in determining whether an area is curtilage: "1) "the proximity of the area claimed to be curtilage to the home;" 2) "whether the area is included within an enclosure surrounding the home;" 3) "the nature of the uses to which the area is put;" and 4) "the steps taken by the resident to protect the area from observation by people passing by." *Reilly*, 76 F.3d at 1276 (quoting *United States v. Dunn*, 480 U.S. 294, 301 (1987)). These factors are "not necessarily exclusive," and the court is not to apply them mechanically, as they are not a "finely tuned formula," but instead are "useful analytical tools." *Id.* (quoting *Dunn*, 480 U.S. at 301). The touchstone of the inquiry remains whether plaintiff had a reasonable expectation of privacy in the area at issue.

Defendant is correct that by labeling the relevant area as "curtilage," plaintiff is not making a factual allegation, but rather stating a conclusion.

*See, e.g., Brocuglio v. Proulx*, 478 F. Supp. 2d 297, 302 (D. Conn. 2007) ("The labeling of a particular area "curtilage" as opposed to "open fields," therefore, states a conclusion that the area is subject to Fourth Amendment protections."). The yard of a residential property is not necessarily curtilage and there is no per se rule for what is and what is not curtilage. *See, e.g., United States v. Titemore,* 437 F.3d 251, 252-60 (2d Cir. 2006).  In determining the scope of curtilage, the court must rely on factual questions, although those factual questions are guided by the legal framework laid out by the Supreme Court.  *See Brocuglio*, 478 F. Supp. 2d at 303.

The court does not seek at this stage to resolve the question of whether plaintiff had a reasonable expectation of privacy over the relevant property, as resolution of that question is better suited for summary judgment.  *Cf. Carr v. Village of Richmond*, No. 96 C 50203, 1996 U.S. Dist. LEXIS 17069, at *35 n.11 (N.D. Ill. Nov. 15, 1996) (noting that "the issue of whether a curtilage exists or whether a homeowner has a reasonable expectation of privacy therein is better-suited to a motion for summary judgment"). Before the case can proceed to the summary judgment stage, however, plaintiff must plead sufficient facts to allow the court to draw a reasonable inference that defendant entered property over which plaintiff had a reasonable expectation of privacy.  The only relevant facts contained in plaintiff's complaint are that the NLPD entered the "protected side and rear yards" of plaintiff's property and that the rear and side perimeters of

the property are fenced.  Compl. ¶¶ 8-9. Although this is very threadbare pleading, it is plausible that the side and rear yards of plaintiff's property could be found to be curtilage, depending on factors such as the configuration of the space, the uses to which it was put and its visual and other accessibility to the public. Thus the court will not dismiss plaintiff's *Monell* claim on this grounds.

In regards to defendants' argument regarding temporal proximity, the authority cited by defendant does not demonstrate that temporal proximity is an element of a *Monell* claim, and does not support dismissal of plaintiff's complaint.  Although the four incidents described in plaintiff's complaint occur over the course of approximately five (5) years and four (4) months, defendant provides no authority for dismissing the case on these grounds, and the court declines to adopt this reasoning absent further factual development.

Because the paucity of factual allegations in plaintiff's complaint does not allow the court to draw the reasonable inference that defendant had an unofficial policy or custom of allowing unconstitutional searches of plaintiff's property, or that defendant is liable for a failure to train the NLPD, this claim is dismissed without prejudice to re-filing in an amended complaint within twenty-one (21) days of this opinion.

## C. Supervisory Liability as to Defendant Ackley

In his second count, plaintiff alleges that Defendant Ackley is liable under section 1983 for failing to provide adequate training to ensure that

14

her subordinate officers did not violate plaintiff's constitutional right against warrantless entry into the curtilage of his property.

Defendants argue (1) that plaintiff has failed to adequately allege personal involvement by defendant Ackley, and (2) that plaintiff has failed to identify a specific defect in the NLPD officers' training. Plaintiff takes the opposite position on both points.

Plaintiff may not bring a section 1983 claim against Ackley based solely on a theory of vicarious liability. *Iqbal*, 556 U.S. at 676 ("vicarious liability is inapplicable to . . . § 1983 suits"). Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* To establish supervisory liability, the plaintiff must show one of the following:

> (1) the defendant actually and directly participated in the alleged unconstitutional acts; (2) the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) the defendant created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) the defendant was grossly negligent in supervising the correctional officers who committed the constitutional violation; and (5) the defendant failed to take action in response to information regarding the occurrence of unconstitutional conduct.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

The Second Circuit has raised the possibility that the *Colon* test was overruled in part by the Supreme Court's decision in *Iqbal*, and that the requirement for making out a claim of supervisory liability is now more demanding. *See, e.g.*, *Grullon*, 720 F.3d at 139. However, the Second Circuit has thus far declined to resolve the question, as many other courts

in this district have noted.  *See, e.g., Daniels v. Murphy*, No. 3:11cv286 (AWT), 2014 U.S. Dist. LEXIS 96929, at *11 (D. Conn. July 17, 2014) ("Because it is unclear whether *Iqbal* overrules or limits *Colon*, the court will continue to apply the categories for supervisory liability set forth in *Colon*."). This court does not need to consider the question of whether to apply the stricter standard because plaintiff has not satisfied the less exacting *Colon* standard. Further, even if plaintiff had met the *Colon* test, other courts in this district have found that where the "constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth, Eighth or Fourteenth Amendments, the personal involvement analysis set forth in *Colon v. Coughlin* may still apply." *Shepherd v. Powers*, No. 11Civ.6860, 2012 U.S. Dist. LEXIS 141179, at *34-35 (S.D.N.Y. Sept. 27, 2012) (quotation and citations omitted); *see also Adeyemi v. Lightner*, No. 3:12cv1525, 2014 U.S. Dist. LEXIS 17421, at *15-16 (D. Conn. Feb. 12, 2014) (noting that "the majority of district court decisions have declined to extend *Iqbal* absent clear instruction from the Second Circuit" and applying the *Colon* standard to "claims of supervisory liability that do not involve discriminatory intent." (citations omitted)).

Plaintiff does not plead any direct involvement by defendant Ackley in any of the alleged unconstitutional acts. Instead, plaintiff's theory of liability is that Ackley was aware of and deliberately indifferent to the need to train or re-train her officers in order to prevent such unconstitutional

16

acts. Plaintiff has not provided sufficient factual allegations in his complaint to support his theory of liability.  The statement that "[d]efendant Ackley had specific knowledge concerning the need to conduct such training . . . in light of complaints directed to her and other municipal officials by plaintiff," Compl. ¶ 19, is the sort of naked assertion devoid of factual enhancement that *Iqbal* tells us is insufficient to state a claim. Plaintiff also alleges that "[t]he plaintiff has communicated on multiple occasions with supervisors of the defendants' officers, including defendant Ackley, to protest the unlawful and unconstitutional intrusion into the curtilage of his property." Compl. ¶ 11. Plaintiff omits important facts, such as when the complaints were made, the form of the complaints, how the complaints were transmitted, and the content of those complaints. This is not information that is unavailable to plaintiff until he conducts discovery; this is information that was available to plaintiff at the time his complaint was filed. Without such factual allegations, the court cannot draw the reasonable inference that Ackley was aware of the allegedly unconstitutional acts or any need to train or re-train her subordinate police officers.  This claim is dismissed without prejudice to re-filing in an amended complaint within twenty-one (21) days of this opinion.

D. Article First, Section 7 of Connecticut Constitution

As an initial matter, the court observes that it is unclear from plaintiff's complaint whether this claim is brought against both defendants. The court will assume that count three is asserted against both defendants,

17

as plaintiff refers to "the Defendants' actions" in Count Three. Compl. ¶ 24.
Defendants do not explicitly address Count Three as to defendant Ackley,
perhaps owing to the vagueness of plaintiffs' complaint, although
defendants do assert in their motion and in the introduction to their
memorandum of law that they are moving to dismiss the complaint in its
entirety.

## 1. Municipal Liability Under Article First, Section 7

Defendants argue that there is no right to sue a municipality under
article first, section 7 of the Connecticut Constitution. Plaintiff takes the
opposite position.

Article first, section 7 of the Connecticut Constitution provides that:
"The people shall be secure in their persons, houses, papers and
possessions from unreasonable searches or seizures; and no warrant to
search any place, or to seize any person or things, shall issue without
describing them as nearly as may be, nor without probable cause
supported by oath or affirmation." Although there is no explicit cause of
action in that constitutional provision, the Connecticut Supreme Court has
held that a plaintiff may bring an action against individual defendants for
money damages stemming from alleged violations of article first, section 7.
*See Binette v.* Sabo, 710 A.2d 688, 693-94 (Conn. 1998). However, the
Connecticut Supreme Court has not answered the question of whether the
cause of action can be extended to municipalities. *See, e.g., Goode v.
Newton*, No. 3:12cv754, 2013 U.S. Dist. LEXIS 35171, at *24 (D. Conn. Mar.

13, 2013) (noting that "it remains an open question whether a *municipality* can be liable, and, if so, on the basis of what legal standard."). However, several Connecticut Superior Courts have found that the cause of action cannot be extended to municipalities. *See, e.g.*, *Aselton v. Town of E. Hartford*, No. X07CV010079187S, 2002 Conn. Super. LEXIS 3904, at \*18 (Conn. Super. Ct. Dec. 3, 2002) (finding no municipal liability under article first, section 7); *see also O'Connor v. Wethersfield Bd. of Educ.*, No. CV0100808376, 2003 Conn. Super. LEXIS 2366, at \*20 (Conn. Super. Ct. July 7, 2003) (citing *Aselton* and granting summary judgment because "the court believes that the reasoning in *Aselton* supports the conclusion that a *Bivens* action may not be brought directly against a governmental entity"), *vacated in part on other grounds upon reconsideration*, 2003 Conn. Super. LEXIS 2458 (Conn. Super. Ct. Aug. 22, 2003); *Feliciano v. City of Hartford*, No. CV010806525S, 2003 Conn. Super. LEXIS 527, at \*4 (Conn. Super. Ct. Feb. 21, 2003) (distinguishing *Bivens* and noting that "plaintiff seeks to extend the *Bivens* decision beyond its intended application" by extending liability for a state constitutional violation to a municipality); *Bazzano v. City of Hartford*, No. CV980584611S, 1999 Conn. Super. LEXIS 3145, at \*6-8 (Conn. Super. Ct. Nov. 18, 1999) (dismissing article first, section 7 claim against municipality).

There is precedent in this district for allowing a plaintiff to assert a claim under article first, section 7 against a municipality. However, that case is distinguishable from this action, as the issue was not presented for

the court's consideration.  The defendant did not "put forward any legal basis that Connecticut law bars municipal liability under *Binette*" and plaintiff had adequately plead *Monell* claims. *Goode*, 2013 U.S. Dist. LEXIS 35171, at \*25. The instant case is more akin to several other decisions in this district in which the court found that plaintiffs had failed to adequately allege a *Monell* claim, and therefore declined to reach the issue of whether plaintiff may assert municipal liability under article first, section 7. *See Rogoz v. City of Hartford*, No. 3:11cv500, 2012 U.S. Dist. LEXIS 136405, at \*21-22 (D. Conn. Sept. 24, 2012) (dismissing plaintiff's claim under article first, section 7 for failing to adequately allege a *Monell* claim); *Morales v. Town of Glastonbury*, No. 3:09-cv-713, 2012 U.S. Dist. LEXIS 4796, at \*35-36 (D. Conn. Jan. 17, 2012) (declining to reach question of whether Connecticut courts would allow a claim of municipal liability under article first, section 7 where plaintiff failed to establish a viable *Monell* claim against the municipal defendant); *Seri v. Town of Newtown*, 573 F. Supp. 2d 661, 670 (D. Conn. 2008) (same). Because plaintiff has not adequately alleged a claim against New London under the federal constitution, the court declines to consider whether plaintiff's claim is cognizable, and grants defendant's motion to dismiss without prejudice to re-filing in an amended complaint within twenty-one (21) days of this opinion.

In regards to defendant Ackley, defendant cites to no authority barring plaintiff from bringing a claim of supervisory liability for violation of article first, section 7. Given that the Connecticut Supreme Court relied on

the policy reasons articulated in *Bivens*[3] when finding that a plaintiff may bring a claim under article first, section 7, *Binette*, 710 A.2d at 700 ("a state *Bivens*-type action is an appropriate remedy for the unique harm likely to result from a violation of [article first, section 7]"), it is a logical extension of that reasoning to allow a claim for supervisory liability, as a plaintiff may bring a federal *Bivens* claim against a supervisory defendant, *see, e.g.*, *Vazquez-Mentado v. Buitron*, 995 F. Supp. 2d 93 (N.D.N.Y. 2014) (considering a *Bivens* claim for supervisory liability).

The court need not at this time reach the question of whether plaintiff may bring a claim for supervisory liability under article first, section 7, as plaintiff adds no new allegations in support of his claim of supervisory liability for a violation of the Connecticut Constitution. Because plaintiff has not adequately alleged that defendant Ackley had information indicating that unconstitutional acts were occurring, *see supra* Part III.C, the claim is dismissed without prejudice to re-filing in an amended complaint within twenty-one (21) days of this opinion.

## 2. Governmental Immunity

Defendant argues that governmental immunity protects New London and Ackley from liability because their duties require the exercise of discretion. Plaintiff argues in response that "unconstitutional conduct is

---

[3] *"Bivens"* refers to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), in which the Supreme Court created a private right of action against individual defendants for damages arising from injuries sustained as a result of a violation of the Fourth Amendment to the U.S. Constitution.

never a 'discretionary act,'" Pl. Obj. at 23, and invokes an exception to governmental immunity.

Municipalities in Connecticut enjoy statutory immunity from liability for "negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." Conn. Gen. Stat. § 52-557n(a)(2)(B). "[T]he determination as to whether governmental immunity may successfully be invoked by a municipality . . . turns not on the plaintiff's theory of negligence but, rather, on the character of the act or omission complained of in the complaint." *Segreto v. City of Bristol*, 804 A.2d 928, 934 (Conn. App. Ct. 2002) (citations omitted). Connecticut courts apply the same analysis to both municipalities and their employees when considering governmental immunity, and this court will follow suit. *See, e.g.*, *Violano v. Fernandez*, 907 A.2d 1188, 1194-95 (Conn. 2006) ("Section 52-557n(a)(2)(B) extends, however, the same discretionary act immunity that applies to municipal officials to the municipalities themselves"); *Myers v. City of Hartford*, 853 A.2d 621, 625 (Conn. App. Ct. 2004) ("employee immunity for discretionary acts is identical to the municipality's immunity for its employees' discretionary acts under § 52-557n.").

A "ministerial" duty is defined as "duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." *Evon v. Andrews*, 559 A.2d 1131, 1134 (Conn. 1989) (quotation and citations

22

omitted). "The hallmark of a discretionary act is that it requires the exercise of judgment." *Violano*, 907 A.2d at 1193 (quotation and citation omitted).

Even if a municipality or a municipal employee would otherwise be covered by qualified immunity, Connecticut court have recognized three exceptions to the immunity: "first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." *Cotto v. Bd. of Ed. Of City of New Haven*, 984 A.2d 58, 60 n.3 (Conn. 2009) (quoting *Durrant v. Bd. of Educ.*, 931 A.2d 859 (Conn. 2007)).

As plaintiff's complaint is currently plead, defendant New London is entitled to immunity because plaintiff's claims arise from discretionary acts. The Connecticut Supreme Court "has explained that '[i]t is firmly established that the operation of a police department is a governmental function, and that acts or omissions in connection therewith ordinarily do not give rise to liability on the part of the municipality.'" *Swanson v. City of Groton*, 977 A.2d 738, 748 (Conn. App. Ct. 2009) (affirming lower court's granting of summary judgment on plaintiff's claim that defendant municipality was liable for failing to properly train a police officer (citing *Gordon v. Bridgeport Housing Auth.*, 544 A.2d 1185, 1195 (Conn. 1988)); *see also Gordon*, 544 A.2d at 1195 ("The plaintiff's claims run counter to the

great weight of authority that the operation of a police department is a discretionary governmental function.") (collecting cases). Plaintiff does not allege that New London failed to carry out some duty which is to be performed in a prescribed manner without the exercise of judgment or discretion. Rather, plaintiff's claims arise from an alleged unofficial policy or custom.  It appears to this court that the making of policy and or custom in managing a police department requires the exercise of judgment, except where the policy or custom violates clearly established law.  As the plaintiff cites to nothing that shows otherwise, New London is entitled to immunity from this claim.

Defendant Ackley is also entitled to immunity, as "numerous Superior Court judges have held that the acts of training and supervising police officers constitute discretionary acts as a matter of law." *Rokicki v. Putnam Fish & Game Club, Inc.*, No. WWMCV116003596S, 2012 Conn. Super. LEXIS 2202, at *22 (Conn. Super. Ct. Aug. 28, 2012) (collecting cases); *see also Bento v. City of Milford*, No. 3:13cv1385(JBA), 2014 U.S. Dist. LEXIS 59079, at *14-15 (D. Conn. Apr. 29, 2014) ("considerations of who to hire, how to train such people, and how to supervise employees are decisions requiring the use of judgment and discretion." (quoting *Gervais v. Town of W. Hartford Bd. of Educ.*, No. CV950555396S, 1996 Conn. Super. LEXIS 1897, at *11 (Conn. Super. Ct. July 25, 1996))); *Mazariegos v. City of Stamford*, No. FSTCV116010359S, 2013 Conn. Super. LEXIS 2359, at *7 (Conn. Super. Ct. Oct. 17, 2013) ("In the context of claims arising out of the

failure to properly or adequately train and supervise municipal police officers, the courts have generally found that such considerations fall within the discretionary function of the municipality.") (collecting cases); *Michalewski v. Town of Farmington*, NO. CV126014761, 2013 Conn. Super. LEXIS 1404, at *26-27 (Conn. Super. Ct. June 25, 2013) ("Courts in Connecticut consistently have held that hiring, supervising, training and firing police officers are discretionary duties protected by governmental immunity.") (collecting cases).

Plaintiff has not alleged that Ackley was obligated under any set of statute, rules, regulations, or ordinances to train her subordinate officers in a certain way, and thus Ackley is entitled to qualified immunity under the complaint as it is now plead. *See, e.g.*, *Rokicki*, 2012 Conn. Super. LEXIS 2202, at *21-22 (dismissing plaintiff's failure to train claim against municipal employee where "there is no showing that [municipal employee] was obligated under any set of statutes, regulations, ordinances, or rules to perform training in a prescribed manner without the exercise of judgment or discretion.").

Of the three exceptions to qualified immunity, plaintiff argues only the "imminent harm exception," which applies where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm. Pl. Obj. at 25. Plaintiff asserts he was an "identifiable person" because he had complained to defendants about the alleged unconstitutional conduct, and

that the defendants failed to stop it. To invoke the imminent harm exception a plaintiff must show all three of the following: "(1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm." *Doe v. Petersen*, 903 A.2d 191, 198 (Conn. 2006).

To the extent that plaintiff argues that he was an identifiable victim because he made complaints, plaintiff has failed to adequately allege that defendants were aware of the alleged unconstitutional searches, as discussed above, *supra* Part III.B-C. Even assuming, hypothetically, that plaintiff had included sufficient factual allegations for the court to infer that he had complained of earlier unconstitutional acts before the later incidents occurred, plaintiff fails to invoke the imminent harm exception. It would not be apparent to any public official that New London's alleged unofficial policy, or Ackley's failure to train, would necessarily result in harm to plaintiff. *Cf. Seri*, 573 F. Supp. 2d at 676 ("Because it would not be apparent to any public official that the result of not disciplining its officers would be to subject [plaintiff] to a significant and foreseeable risk of imminent harm, this allegation is also insufficient to bring it within the ambit of the identifiable person/imminent harm exception as a matter of law.").  The conduct alleged would victimize the entire community, and not just one identifiable victim. *Cf. Evon*, 559 A.2d at 1135 ("The class of possible victims of an unspecified fire that may occur at some unspecified time in the future is by no means a group of 'identifiable persons'").

Plaintiff has failed to invoke any exception to qualified immunity as to either defendant. Although the issue of governmental immunity will often be a question of fact to be decided by a jury, Connecticut courts have recognized that "there are cases where it is apparent from the complaint." *Segreto*, 804 A.2d at 934 (quotation and citations omitted). As it is currently plead, plaintiff's claims under article first, section 7 against both defendants are dismissed as barred by governmental immunity.

### 3, Egregiousness

Defendant argues correctly that Connecticut courts limit liability for violations of article first, section 7 to circumstances involving egregious violations. *See Bauer v. City of Hartford*, No. 3:07-cv-1375, 2010 U.S. Dist. LEXIS 115199, at *37 (D. Conn. Oct. 29, 2010) ("Since *Binette*, Connecticut courts have limited private rights of action for Article 1 §§ 7, 9 violations to circumstances involving egregious violations."); *see also ATC P'Ship v. Town of Windham*, 741 A.2d 305, 314 (Conn. 1999) ("in [*Binette v. Sabo*] . . . we recognized the validity of such a state constitutional claim under article first, §§ 7 and 9, of our state constitution in the context of allegations of an egregiously unreasonable search and seizure."). There mere fact of illegal entry into plaintiff's home "does not rise to [the] level of egregiousness necessary to sustain a claim under the Connecticut Constitution." *Bauer*, 2010 U.S. Dist. LEXIS 115199, at *38; *see also Martin v. Brady*, 780 A.2d 961, 967 (Conn. App. Ct. 2001) (finding that plaintiff's allegations of "having been pushed to the ground on one occasion and of having windows and

doors smashed on another occasion" by defendant officers did not rise to the level of egregious conduct).

Plaintiff argues that repeated unconstitutional entries onto plaintiff's property is egregious conduct. Plaintiff cites to Connecticut authority for the principle that "[t]he English common law, upon which much of this country's constitutional and common law is based, recognized that intrusion into the home constituted especially egregious conduct." *State v. Geisler*, 610 A.2d 1225, 1233 (Conn. 1992) (affirming appellate court's ruling that defendant's suppression motion should be granted.). However, *Geisler* does not address civil liability under article first, section 7, and plaintiff cites to no authority to counter precedent establishing that mere unlawful entry does not itself rise to the level of egregiousness required to sustain a claim under article first, section 7. Plaintiff also cites to *Rolon v. Murray*, in which the Connecticut Superior Court denied defendant police officers' motion to dismiss plaintiffs' Connecticut Constitution claims. No. CV00043490S, 2002 Conn. Super. LEXIS 3754 (Conn. Super. Ct. Nov. 26, 2002). Plaintiff's citation to *Rolon* ignores the fact that in addition to alleging unconstitutional entry into plaintiffs' home, the *Rolon* plaintiffs also alleged that the were assaulted and beaten by the defendants, causing them bodily injury and pain. 2002 Conn. Super. LEXIS 3754, at *2. Plaintiff cites to nothing to contradict precedent finding that mere unconstitutional entry is insufficient to sustain a claim under article first, section 7. Because plaintiff's complaint contains no factual allegations beyond the allegation

that NLPD officers made warrantless entries into the side and rear yards of his property, plaintiff has failed to allege conduct sufficiently egregious to support a claim under article first, section 7.

Because defendants are entitled to qualified immunity and because plaintiff has for the above reasons failed to adequately allege claims under article first, section 7, Count Three is dismissed as to both defendants. If plaintiff wishes to re-plead the claims in Count Three, he must file a motion seeking leave to amend, accompanied by a memorandum of law citing authority for (1) why this court should disregard Connecticut Superior Court cases rejecting municipal liability under article first, section 7, and (2) why his claims are not barred by governmental immunity, as well as a proposed amended complaint, within twenty-one (21) days of this opinion. If plaintiff files such a memorandum of law, defendant's response is due fourteen (14) days after that.

## CONCLUSION

For the above reasons, defendant's motion to dismiss is granted. If plaintiff wishes to file an amended complaint reasserting Counts One and Two, it is due twenty-one (21) days from the date of this opinion. If plaintiff wishes to re-allege Count Three, he must file a motion seeking leave to amend, supported by a memorandum of law as described above in Part III.D.3 and a proposed amended complaint within twenty-one (21) days of this opinion.

IT IS SO ORDERED.

_____/s/_____
**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: March 31, 2015.**